UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SILVER BOW TRUST U/T/A, | Case No. 24-cv-4271 (LMP/DJF) |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND AWARD OF ATTORNEYS' FEES AND COSTS |
| VERDE MOBILITY, INC., and MICHAEL LUTHER, | |
| Defendants. | |

Plaintiff Silver Bow Trust U/T/A ("Silver Bow") asserts claims for breach of contract and unjust enrichment against Defendants Verde Mobility, Inc. ("Verde"), and Michael Luther ("Luther") (collectively, "Defendants") relating to Verde's default on a loan agreement with Silver Bow, for which Luther is the guarantor. *See generally* ECF No. 12. Neither Defendant answered or otherwise responded to Silver Bow's complaint by the time such answer or response was due, so Silver Bow seeks entry of default judgment against Defendants for the amount owed under the loan agreement, including an award of its reasonable attorneys' fees and costs. *See* ECF No. 21; ECF No. 24 at 3, 5. For the reasons set forth below, Silver Bow's motion is granted in part.

**FACTUAL BACKGROUND**

Silver Bow is an unincorporated trust currently administered by a sole acting trustee, Cresset Trust Company, LLC ("Cresset"), a South Dakota limited liability company. ECF No. 12 ¶ 3. All beneficiaries of the trust are residents of Minnesota. *Id.* Verde is an inactive

corporation, which was incorporated in Nebraska. *Id.* ¶ 4. Luther, a Nebraska resident, shares the same address as Verde's last known address. *See id.* ¶¶ 4–5.

On or around December 8, 2022, Luther executed a promissory note (the "Note") on behalf of Verde with Silver Bow in connection with a larger transaction between the parties. *Id.* ¶ 8; *see* ECF No. 12-1. Under the Note's terms, Verde agreed to pay Silver Bow the principal amount of $85,000 and a one-time fee of $10,000 by December 31, 2022 (the "Maturity Date"). ECF No. 12 ¶ 8; *see* ECF No. 12-1 at 2, 9. The Note provides that simple interest on any outstanding principal amount would initially accrue at 14% per year, but in the event of default, the rate would automatically increase to 18% per year until the default was cured. ECF No. 12 ¶ 9; *see* ECF No. 12-1 at 2–3. The Note further provides that Silver Bow is entitled to recover reasonable attorneys' fees and court costs associated with enforcing the Note in the event of default. ECF No. 12-1 at 4–5.

Luther also executed a personal guaranty (the "Guaranty"), under which he agreed to "personally guarantee[]" Verde's "payment obligation of $85,000 plus fees and interest" and to "be responsible for the face value of the obligation in the amount of $85,000 plus fees and interest" should Verde default on the Note. ECF No. 12 ¶ 10; ECF No. 12-2 at 2. The Guaranty further provides that upon Luther receiving notice of "lack of payment for part or all of the amount due" under the Note, Luther would be held "jointly and severally responsible for repayment" with Verde. *Id.*

Defendants did not make any payments on the Note by the Maturity Date. ECF No. 12 ¶ 11. Accordingly, on September 5, 2024, Silver Bow sent Defendants a written notice of default (the "Notice") on the Note because of nonpayment. *Id.* ¶ 12; ECF No.

2

12-3.  Silver Bow demanded a total payment of $117,672.88 by September 24, 2024, to cure Verde's default.  Silver Bow's demand represented the principal amount of $85,000; the one-time fee of $10,000; and $22,672.88 in accrued interest as of September 3, 2024.  *See* ECF No. 12 ¶ 12; ECF No. 12-3 at 2.  Luther responded to the Notice on September 23, 2024, indicating that he was "planning to make the payoff for Verde" that week and asking for information on how to complete the payment.  ECF No. 12 ¶ 14; ECF No. 12-4 at 7.  Later that day, a Silver Bow representative replied and directed Luther to make the payment to Cresset.  ECF No. 12 ¶ 14; ECF No. 12-4 at 7.

By October 1, 2024—eight days after the correspondence between Luther and Silver Bow—Defendants still had not made any payments on the Note.  ECF No. 12 ¶ 15.  Counsel for Silver Bow contacted Luther and reiterated Silver Bow's demand for payment, to which Luther responded that he would "get the payment out asap."  *Id.*; ECF No. 12-4 at 6.  Counsel for Silver Bow contacted Luther again on October 4, 2024, indicating that the demanded payment amount had grown to $122,642[1] given additional accrued interest and seeking confirmation that Luther would render payment.  *See* ECF No. 12 ¶ 16; ECF No. 12-4 at 4.  Counsel for Silver Bow further indicated that interest would continue to accrue and that attorneys' fees and collection costs would continue to increase until

---

[1] There was some confusion as to the precise amount owed under the Note.  In the September 23, 2024 correspondence between Luther and Silver Bow, the Silver Bow representative indicated that Defendants owed $200,672.88 under the Note.  ECF No. 12-4 at 7.  However, upon consulting counsel, Silver Bow later confirmed the outstanding amount to be $122,642 as of October 4, 2024.  *Id.* at 4.  Luther did not dispute that Defendants owed the latter amount.  *See id.* at 3–4 ("There was an earlier message that showed a payoff of about $200,000+.  Your computation is more in line.").

3

payment was received. ECF No. 12-4 at 4. Silver Bow agreed, however, to "forgo collection of the attorney fees [and] collection costs" if Luther made the payment by October 7, 2024. *Id.* Luther again indicated that he was coordinating payment. *Id.* at 3–4; ECF No. 12 ¶ 16.

Counsel for Silver Bow contacted Luther again on October 7, 2024, to confirm Luther intended to make the payment. ECF No. 12 ¶ 17; ECF No. 12-4 at 3. Luther again indicated that he was coordinating payment, agreed to "pay [Silver Bow's] legal costs along with the other items," and inquired about the amount due. ECF No. 12 ¶ 17; ECF No. 12-4 at 2–3. Counsel for Silver Bow responded that the total due was $125,642, inclusive of attorneys' fees and collection costs. ECF No. 12 ¶ 17; ECF No. 12-4 at 2. Luther replied that he would "sign off and arrange for it to be sent." ECF No. 12 ¶ 17; ECF No. 12-4 at 2. Nevertheless, Defendants did not make the payment. ECF No. 12 ¶ 18.

As of March 20, 2025, the amount due under the Note was $129,661.37, inclusive of the principal amount, the one-time fee, and accrued interest. ECF No. 26 ¶¶ 3–4. Silver Bow also incurred $14,727.36 in attorneys' fees and costs as of that date. ECF No. 25 ¶ 8; ECF No. 25-1 at 2–4.

**PROCEDURAL BACKGROUND**

Silver Bow filed its original complaint on November 25, 2024, asserting claims for breach of contract and unjust enrichment against Defendants. *See generally* ECF No. 1. After curing jurisdictional defects in its pleadings at the direction of the Court, *see* ECF Nos. 5, 7, Silver Bow filed an amended complaint on December 16, 2024, *see* ECF No. 12. Defendants were served with summonses and copies of the amended complaint on

January 8, 2025. ECF Nos. 14–15. Thus, Defendants' answers or other responsive pleadings were due on January 29, 2025. ECF Nos. 14–15; *see also* Fed. R. Civ. P. 12(a)(1)(A). Neither Silver Bow nor Luther filed an answer or other response by that deadline.

On January 30, 2025, the Court ordered Silver Bow to contact Defendants regarding their obligation to respond to Silver Bow's amended complaint, ECF No. 16, which Silver Bow did the following day, ECF No. 17. Luther responded to Silver Bow on or around February 3, 2025, and requested wire instructions to pay the outstanding amount, but Defendants did not render any payment. To date, Defendants have not answered or otherwise responded to the amended complaint. *See* ECF No. 25 ¶¶ 4–5.

Silver Bow applied for entry of default as to both Defendants on February 17, 2025. ECF No. 18. The Clerk of Court entered default against both Defendants the next day. ECF No. 20. Silver Bow now moves for entry of default judgment against Defendants and an award of its attorneys' fees and costs incurred in pursuing collection of the debt Defendants owe under the Note. ECF No. 21. Defendants have not responded to Silver Bow's motion.

## ANALYSIS

Silver Bow seeks entry of default judgment against Defendants in the amount of $129,661.37 and an award of attorneys' fees and costs in the amount of $14,727.36. *See* ECF No. 24 at 8–9. The Court finds that entry of default judgment is warranted and Silver Bow's request for an award of attorneys' fees and costs is appropriate.

5

I.  **Default Judgment**

"[D]efault judgments are not favored by the law and should be a rare judicial act" because "there is a judicial preference for adjudication on the merits." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (internal quotation marks omitted) (citations omitted). Federal courts nevertheless may enter default judgment against a party who fails to file a responsive pleading to a complaint or otherwise defend against a lawsuit. *See* Fed. R. Civ. P. 55; *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1039 (D. Minn. 2015) (citation omitted) ("[T]he Court must consider whether the allegedly defaulting party has filed a responsive Answer, or other pleading."). Upon default, the factual allegations in the complaint are deemed to be admitted and are accepted as true, except those relating to the amount of damages. *Murray v. Lee*, 595 F.3d 868, 871 (8th Cir. 2010); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The determination as to whether to enter default judgment is within a district court's discretion. *See Belcourt*, 786 F.3d at 661.

A.  **Entry of Default**

Securing a default judgment pursuant to Federal Rule of Civil Procedure 55 is a two-step process. The party seeking default judgment first must obtain an entry of default from the Clerk of Court. *See* Fed. R. Civ. P. 55(a). "Only after an application is made, and granted under Rule 55(a), can a plaintiff seek a Default Judgment" under Rule 55(b). *Armstrong v. Astrue*, 569 F. Supp. 2d 888, 895 n.6 (D. Minn. 2008).

Silver Bow filed an amended complaint on December 16, 2024, ECF No. 12, and summonses and copies of the amended complaint were served on Defendants on January 8, 2025, ECF Nos. 14–15. Upon Defendants' failure to file an answer or other response, Silver Bow promptly informed Defendants of their obligation to do so. ECF No. 17. When Defendants still did not file an answer or other response, Silver Bow applied for entry of default, ECF No. 18, which the Clerk of Court entered shortly thereafter, ECF No. 20. Silver Bow then filed its motion for default judgment. ECF No. 21. Silver Bow's motion for entry of default judgment is therefore procedurally proper. *See* Fed. R. Civ. P. 55(a)–(b).

Further, in the more than three months since being served summonses and copies of the amended complaint, Defendants have neither appeared before this Court nor offered any indication that they intend to defend against Silver Bow's claims. And while Silver Bow represents that it discussed, but was unable to resolve, the issues pertaining to its motion with Defendants, *see* ECF No. 23, Defendants did not respond to Silver Bow's motion. Default judgment is appropriate in these circumstances. *See United States v. Yennie*, 585 F. Supp. 3d 1194, 1198 (D. Minn. 2022) (internal quotation marks omitted) (citation omitted) ("A default judgment is not unfair when a defendant who has been properly served with a summons and complaint fails to respond or otherwise appear.").

**B.  Legitimacy of Claims**

Even if default judgment is otherwise warranted because a party did not timely answer or respond to a complaint, "it is nonetheless incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering

7

final judgment." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019) (internal quotation marks omitted) (citation omitted). "[M]ere conclusions of law and recitations of the elements of the causes of action do not constitute 'unchallenged facts.'" *Id.* (citation omitted).

Silver Bow asserts two claims for breach of contract: one as to Verde's default on the Note, ECF No. 12 ¶¶ 19–25, and the other as to Luther's failure to cure Verde's default as required by the Guaranty, *id.* ¶¶ 26–30. Silver Bow also asserts, in the alternative, a claim for unjust enrichment against both Defendants. *See id.* ¶¶ 31–35. Based on the Court's review, Silver Bow has sufficiently established legitimate breach-of-contract claims, and the damages amount Silver Bow requests is supported by the record.

1. **Breach of Contract**

To establish a valid claim for breach of contract under Minnesota law,[2] a plaintiff must show (1) formation of a contract, (2) performance by the plaintiff of any conditions precedent to its right to demand performance by the defendant, and (3) breach of the contract by the defendant. *Metro. Transp. Network, Inc. v. Collaborative Student Transp. of Minn., LLC*, 6 N.W.3d 771, 782 (Minn. Ct. App. 2024).

Luther executed the Note on Verde's behalf and later executed the Guaranty, wherein he agreed to be held jointly and severally liable for the amount due under the Note in the event of default by Verde. ECF No. 12 ¶¶ 8, 10; *see* ECF No. 12-1 at 10; ECF No. 12-2 at 2. Silver Bow disbursed the $85,000 principal amount to Verde, but neither Verde

---

[2]   The Note states that it is to be "construed and enforced in accordance with" Minnesota law. ECF No. 12-1 at 8.

8

nor Luther made the required payments, resulting in a default as defined by the Note. *See* ECF No. 12 ¶¶ 8, 11; ECF No. 12-1 at 3 (defining Verde's "failure to pay [Silver Bow] any amount of Principal or Interest when and as due under [the] Note" as an "Event of Default"). Upon receiving the Notice, Luther did not dispute that Verde had defaulted on the Note and acknowledged his obligation to cure that default, but to date, neither Defendant has cured Verde's breach by paying the amount due under the Note. *See* ECF No. 12 ¶¶ 12–18; ECF No. 12-4 at 2–7.

These unchallenged facts establish valid claims for breach of contract. *See Metro. Transp. Network*, 6 N.W.3d at 782. Accordingly, default judgment is warranted as to Silver Bow's breach-of-contract claims.

### 2.     Unjust Enrichment[3]

To establish a claim for unjust enrichment, a plaintiff must show that the defendants "knowingly received something of value to which [they were] not entitled, and that the circumstances are such that it would be unjust for [them] to retain the benefit." *Metro. Transp. Network*, 6 N.W.3d at 786 (first alteration in original) (citation omitted). But unjust enrichment is a claim in equity, and "equitable relief cannot be granted where the rights of the parties are governed by a valid contract." *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981); *see also Lansing v. Concrete Design Specialties,*

---

[3]     It is unclear whether Silver Bow seeks recovery in connection with its unjust enrichment claim. *See* ECF No. 24 at 7 (emphasis added) ("Silver Bow seeks recovery of damages in connection with, *among other claims*, its Count I for breach of the Note and Count II for breach of the Guaranty."). In the interest of thoroughness, the Court proceeds with analyzing Silver Bow's unjust enrichment claim.

*Inc.*, No. A05-1543, 2006 WL 1229638, at *5 (Minn. Ct. App. May 9, 2006) ("Except in very limited situations, when a valid contract governs the relationship between the parties, the doctrine of unjust enrichment has no application.").

As discussed above, the rights and obligations of the parties here are governed by valid contracts. *See* ECF Nos. 12-1, 12-2. Silver Bow cannot establish a claim for unjust enrichment under Minnesota law, so Silver Bow's motion for default judgment as to its unjust enrichment claim is denied.

### C.  Damages

A party seeking a default judgment must "prove its actual damages to a reasonable degree of certainty." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818–19 (8th Cir. 2001). A district court may ascertain damages "by comput[ing] from facts of record . . . the amount which the plaintiff is lawfully entitled to recover." *Pope v. United States*, 323 U.S. 1, 12 (1944). "Once the amount of damages has been established, the court may enter judgment." *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008).

Silver Bow calculates that it is entitled to judgment as to its breach-of-contract claims in the amount of $129,661.37. ECF No. 24 at 7–8; ECF No. 26 ¶ 4. That amount represents the $85,000 principal amount of the Note, the $10,000 one-time fee, and $34,661.37 in accrued interest on the outstanding amount from when the Note was executed on December 8, 2022, through March 20, 2025. ECF No. 26 ¶ 4.

The Court is satisfied that the damages award Silver Bow requests accurately reflects the amount to which it is legally entitled for Defendants' breaches.[4] Accordingly, Silver Bow is awarded $129,661.37 in actual damages for Verde's breach of the Note and Luther's breach of the Guaranty, for which Defendants are jointly and severally liable.

## II.   Attorneys' Fees and Costs

Silver Bow also seeks an award of its attorneys' fees and costs associated with collecting Defendants' debt under the Note.  *See* ECF No. 24 at 8–9; ECF No. 12-1 at 4–5.  The Note specifically provides that upon Defendants receiving notice of a default, "all costs of enforcement and collection (including court costs and reasonable attorney's fees)" incurred by Silver Bow are "due and payable" by Defendants, in addition to any outstanding amount owed under the Note.  ECF No. 12-1 at 5.

As an initial matter, "if a contract provides for the payment of attorneys' fees incurred in enforcing an agreement, the trial court must award those fees."  *Landmark Infrastructure Holding Co. v. R.E.D. Invs., LLC*, 933 F.3d 906, 911 (8th Cir. 2019); *see also State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994) ("Where loan documents authorize a lender to recover legal expenses associated with collection . . . Minnesota courts will enforce the provision as long as the fees are reasonable.").  Therefore, an award of attorneys' fees is appropriate here, and the Court's primary concern

---

[4]   Notably, in pre-suit correspondence between Luther and Silver Bow in October 2024, Luther acknowledged that Silver Bow's demand for $122,642 was "in line" with what Luther believed Defendants owed.  ECF No. 12-4 at 3–4.  The $129,661.37 that Silver Bow requests now includes additional interest that has accrued since that correspondence.  *See* ECF No. 26 ¶ 4.

is whether the fees Silver Bow seeks are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("It remains for the district court to determine what fee is 'reasonable.'"); *see also Ziehwein*, 510 N.W.2d at 270.

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). The party seeking fees has the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). District courts should exclude hours that were not reasonably expended—for example, "hours that were excessive, redundant, or otherwise unnecessary." *Gehl v. Gleason*, No. 23-cv-2244 (DWF/JFD), 2025 WL 719359, at *2 (D. Minn. Mar. 6, 2025) (citing *Hensley*, 461 U.S. at 434). Whether to award attorneys' fees is "within the broad discretion of the district court." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). Likewise, district courts have "substantial discretion in awarding costs." *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 93 F.4th 408, 422 (8th Cir. 2024) (citation omitted).

Silver Bow states that it incurred $14,213.50 in attorneys' fees through March 20, 2025. ECF No. 25 ¶ 8. Upon careful review of the billing records submitted by Silver Bow, *see* ECF No. 25-1, the Court generally finds the requested fee award to be reasonable. The $14,213.50 in fees represents a total of twenty-eight hours of work by four attorneys and one legal research librarian. *See* ECF No. 25 ¶¶ 9–15. The highest billing rate for any

12

of the four attorneys ranged from $670 per hour to $705 per hour for 7.2 hours of work. *Id.* ¶¶ 10–11. Those rates are slightly above the hourly rates deemed to be reasonable in fee awards granted by courts in this District. *See In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 827, 847 (D. Minn. 2019) (noting that "Minnesota courts have granted fee awards to attorneys billing at hourly rates as high as $650" per hour and collecting cases). The Court observes, however, that the majority of the attorney work—20.6 of the 27.8 attorney hours—was performed by more junior attorneys at hourly rates well below the $650 per hour upper limit. *See* ECF No. 25 ¶¶ 12–14.

Nevertheless, in conducting its careful review, the Court believes that a modest reduction is appropriate for the hours billed that are attributable to Silver Bow's filing of the first and second amended complaints in this matter. As set forth in an order entered on December 2, 2024, Silver Bow initially did not plead sufficient facts to establish complete diversity of the parties, raising concerns about the Court's jurisdiction to hear Silver Bow's claims. *See* ECF No. 5 at 2–4. Silver Bow filed an amended complaint in response to that order, ECF No. 6, but that attempt to cure the jurisdictional defects was unsuccessful, *see* ECF No. 7. Silver Bow's second amended complaint, however, satisfied the Court's concerns. *See* ECF No. 12. The fees associated with amending Silver Bow's complaint were not incurred for activity relating to collecting on Defendants' debt under the Note. The Court therefore will reduce the fee award by $2,988, the amount billed in connection with responding to the Court and amending Silver Bow's complaint between December 3 and December 16, 2024. *See* ECF No. 25-1 at 2–3. This brings the total award of attorneys' fees to $11,225.50.

of the four attorneys ranged from $670 per hour to $705 per hour for 7.2 hours of work. *Id.* ¶¶ 10–11. Those rates are slightly above the hourly rates deemed to be reasonable in fee awards granted by courts in this District. *See In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 827, 847 (D. Minn. 2019) (noting that "Minnesota courts have granted fee awards to attorneys billing at hourly rates as high as $650" per hour and collecting cases). The Court observes, however, that the majority of the attorney work—20.6 of the 27.8 attorney hours—was performed by more junior attorneys at hourly rates well below the $650 per hour upper limit. *See* ECF No. 25 ¶¶ 12–14.

Nevertheless, in conducting its careful review, the Court believes that a modest reduction is appropriate for the hours billed that are attributable to Silver Bow's filing of the first and second amended complaints in this matter. As set forth in an order entered on December 2, 2024, Silver Bow initially did not plead sufficient facts to establish complete diversity of the parties, raising concerns about the Court's jurisdiction to hear Silver Bow's claims. *See* ECF No. 5 at 2–4. Silver Bow filed an amended complaint in response to that order, ECF No. 6, but that attempt to cure the jurisdictional defects was unsuccessful, *see* ECF No. 7. Silver Bow's second amended complaint, however, satisfied the Court's concerns. *See* ECF No. 12. The fees associated with amending Silver Bow's complaint were not incurred for activity relating to collecting on Defendants' debt under the Note. The Court therefore will reduce the fee award by $2,988, the amount billed in connection with responding to the Court and amending Silver Bow's complaint between December 3 and December 16, 2024. *See* ECF No. 25-1 at 2–3. This brings the total award of attorneys' fees to $11,225.50.

Silver Bow also requests $513.86 in costs associated with filing and maintaining this suit. *See* ECF No. 25 ¶ 8. As the prevailing party, Silver Bow "is presumptively entitled to recover all of its costs." *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006) (citation omitted); *see also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). The Court finds that the requested costs are recoverable and reasonable. The total award of costs is $513.86.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that Silver Bow's Motion for Default Judgment and Award of Attorneys' Fees and Costs (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Silver Bow's motion for default judgment as to its claims for breach of contract against Verde and Luther is **GRANTED**;

2. Silver Bow's motion for default judgment as to its alternative claim for unjust enrichment against both Defendants is **DENIED**;

3. Silver Bow is awarded $129,661.37 in damages, for which Defendants are jointly and severally liable;

4. Silver Bow is awarded $11,225.50 in attorneys' fees, for which Defendants are jointly and severally liable; and

5. Silver Bow is awarded $513.86 in costs, for which Defendants are jointly and severally liable.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 6, 2025                     *s/Laura M. Provinzino*
                                       Laura M. Provinzino
                                       United States District Judge